## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:07-cv-00684 Assigned To: Friedman, Paul L. |
| THE AULSON CO., INC. ALAN AULSON MAUREEN AULSON and BOB HILSON | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS INDIVIDUAL DEFENDANTS

This action, filed against The Aulson Co., Inc. (the "Company") and Alan Aulson, Maureen Aulson, and Bob Hilson (collectively, the "Individual Defendants"), seeks unpaid contributions allegedly owed to the International Painters and Allied Trades Industry Pension Fund (the "Fund"). The obligation to pay these contributions arose under a collective bargaining agreement between the Fund and the Company. The Fund's Complaint does not allege that any of the Individual Defendants undertook an obligation, in their personal capacity, to make the contributions; nor does it allege any facts that would support imposition of personal liability for debts of the Company under applicable law. Because the Complaint does not state a claim upon which relief can be granted, and because this Court lacks personal jurisdiction with respect to any of the three Individual Defendants, the Individual Defendants should be dismissed from this action pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(2).

1

## STATEMENT OF FACTS

For purposes of a Motion To Dismiss, facts alleged in the Complaint are assumed to be true. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).[1] Without conceding the truth of these allegations for any other purpose, the Complaint includes the following material assertions with respect to the Individual Defendants:

1.    Each of the Individual Defendants is "an owner, officer, agent or managing agent" of the Company.  Complaint, ¶¶ 6-8.

2.    The Company signed or agreed to abide by the terms of one or more collective bargaining agreements, a Trust Agreement, and a Plan document (collectively, the "Agreements").  Complaint, ¶¶ 9-10.

3.    The Agreements impose various obligations upon the Company, including but not limited to obligations to make contributions and to submit monthly remittance reports. Complaint, ¶¶ 11-12.

Based on these factual allegations, the Complaint asserts the following claims against the Individual Defendants:

In Count I, the Fund alleges a contract claim for $438,666.03, which is the alleged amount due and owing under the terms of the Agreements with the Company.  Complaint, ¶¶ 14-16 (Count I).

In Count II, the Fund alleges a claim under the Employee Retirement Income Security Act ("ERISA") for the same amount, as set forth under the terms of the Agreements with the Company.  Complaint, ¶¶ 17-20 (Count II).

---

[1] This presumption does not extend to inferences "unsupported by the facts set out in the Complaint" or to "legal conclusions cast in the form of factual allegations." *Id.*

In Count IV, the Fund alleges a contract claim for an unspecified amount of contribution liability under the terms of the Agreements with the Company, to be determined by an audit. Complaint, ¶¶ 29-31 (Count IV).[2]

In Count V, the Fund alleges a claim under ERISA for the same unspecified amount of contribution liability under the terms of the Agreements with the Company, to be determined by an audit. Complaint, ¶¶ 32-35 (Count V).

In Count VI, the Fund requests for an injunction prohibiting future failures to adhere to the terms of collective bargaining agreements with the Company requiring contributions and the submission of monthly remittance reports. Complaint, ¶¶ 36-39 (Count VI).

In Count VII, the Fund alleges a claim that the failure to make contributions on a timely basis, as required under the terms of the Agreements with the Company, constitutes a fiduciary breach in violation of section 502(a) of ERISA, 29 U.S.C. § 1132(a). Complaint, ¶¶ 40-50 (Count VII).

## ARGUMENT

The Complaint's sparse factual allegations, which allege only that "the Company" had an agreement and that each Individual Defendant is "an owner, officer, agent or managing agent"[3] of the Company, are insufficient as a matter of law to sustain the six counts that are pleaded against the Individual Defendants.

---

[2] Count III, which seeks a Court Order requiring such an audit, is asserted only against the Company and not the Individual Defendants. Complaint, ¶¶ 21-28 (Count III).

[3] Because the allegations for each Individual Defendant are stated with the disjunctive "or," it is impossible to discern the extent to which the Fund contends that any particular Individual Defendant is an "owner" or "officer." Alan and Maureen Aulson, for example, are "owners" but Bob Hilson is not. If the Complaint had included allegations sufficient to pierce the corporate veil to reach at least one of the listed categories of individuals, this distinction might make a difference. The Fund, however, has not pleaded facts sufficient to reach any of the enumerated categories: "owner," "officer," or agent." Accordingly, allegations against all of the Individual Defendants should be dismissed.

A.    **Status as an Owner, Officer, or Agent Does Not Support Individual**
      **Liability for the Contractual Obligations of a Corporation**

Counts I, IV, and VI of the Complaint set forth contract claims, purportedly against both the Company and the Individual Defendants.[4] The Fund concedes, however, that contract was signed by "the Company." Complaint, ¶¶ 9-10. "The Company," not the Individual Defendants, "agreed to abide by the terms" of the Agreements. *Id.*

A corporation's contractual obligations cannot be transferred to an individual merely because that person is an owner, officer, agent, or employee. Under "generally accepted principles of corporate law," a "corporation is an entity separate and distinct" from its shareholders. *Penick v. Frank E. Basil, Inc. of Delaware*, 579 F. Supp. 160 (D.D.C.), *aff'd*, 744 F.2d 878 (D.C. Cir. 1984). Because of this separation, individuals who own or represent the corporation "generally are not liable on a contract made by the corporation." *Id.* This general rule must prevail unless the plaintiff can establish "by affirmative proof that a unity of ownership and interest exists and that the corporation was created or used for the purpose of perpetrating fraud or wrong." *Id.* (emphasis deleted). No such allegations are contained in the Complaint.

The separation of corporate and individual liability is particularly clear in New York, where the Company was incorporated. *See* Complaint, ¶ 5. When a corporate entity enters into a contract, it is assumed to be the exclusive obligor absent "'clear and explicit evidence' of the defendant's intent to add personal liability to the liability of the entity." *Mason Tenders Council Welfare Fund v. Thomsen Construction Co.*, 301 F.3d 50, 53 (2d Cir. 2002) (quoting *Mencher v. Weiss*, 306 N.Y. 1, 4, 114 N.E.2d 177 (1953)). This recognizes the reality that "'[i]n modern

---

[4] Although Count VI is styled as a claim for injunctive relief, the underlying violation that allegedly justifies this remedy is a purported breach of "terms of the current collective bargaining agreement(s) between the Company and the Union." Complaint, Count VI, prayer for relief (1).

times most commercial business is done between corporations,' not individual stockholders or officers of the corporation." *Id.* (quoting *Salzman Sign Co. v. Beck*, 10 N.Y.2d 63, 67, 217 N.Y.S.2d 55, 176 N.E.2d 74 (1961)). Because of the requirement of "overwhelming evidence of the signatory's intention to assume personal liability," contractual obligations have been passed on to individuals "only in rare cases" where "sufficient evidence of intent" has been present. *Id.*

State law contract principles do not apply directly to this case because of preemption. *See Majewski v. B'Nai B'Rith International*, 721 F.2d 823 (D.C. Cir. 1983) (contractual claims based on collective bargaining agreement preempted by Labor Management Relations Act ("LMRA")); *Stewart v. National Education Ass'n*, 471 F.3d 169 (D.C. Cir. 2006) (contractual claims for relating to employee benefit plan preempted by ERISA). The Complaint's jurisdictional allegations, however, suggest that the Fund intends to premise its contract claims on section 301(a) of LMRA, 29 U.S.C. § 185(a), which authorizes suits for "violations of contracts between an employer and a labor organization." *See* Complaint, ¶ 1. In applying the LMRA, courts look to state contractual law to the extent it is "compatible with the purpose of § 301." *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 457 (1957). The general limitation of contractual liability to the corporate entity, therefore, carries over to the federal law claims in this case.

The Complaint lacks any allegations of fact that would justify a departure from the general rule that individuals are not liable for corporate contracts. Instead, it relies solely on the Individual Defendants' alleged status as "owner[s], officer[s], agent[s] or managing agent[s]." This allegation, without more, is insufficient as a matter of law to state a claim upon which relief can be granted. Accordingly, the Counts I and IV and VI, which set forth the Fund's contract claims, should be dismissed as to each of the Individual Defendants.

**B.    Status as an Owner, Officer, or Agent Does Not Establish
Individual Liability Under ERISA for Plan Contributions**

Counts II and V of the Complaint assert parallel claims under ERISA for the same

contribution amounts sought in the contract claims.  Again, the Fund seeks to extend contribution

liability beyond the Company, which agreed to make the contributions, to the Individual

Defendants.  Again, as a matter of law, the Individual Defendants are not liable on the facts as

alleged in the Complaint.

The violation alleged in these claims arises under ERISA § 515, 29 U.S.C. § 1145, which

provides:

> Every <u>employer</u> who is obligated to make contributions to a
> multiemployer plan under the terms of the plan or under the terms
> of a collectively bargained agreement shall, to the extent not
> inconsistent with law, make such contributions in accordance with
> the terms and conditions of such plan or such agreement.

*Id.* (emphasis added) (cited in Complaint, ¶¶ 18, 20, 33, 35).  In previous litigation brought by

this very same Fund, the D.C. Circuit affirmed this Court's ruling that the exclusive "employer"[5]

for purposes of this provision is the corporation that undertook the contribution obligation, and

not its individual owners or officers.  *International Brotherhood of Painters & Allied Trades

Union v. George A. Kracher, Inc.*, 856 F.2d 1546 (D.C. Cir. 1988).

The facts of *Kracher* are indistinguishable from this case.  In addition to the corporation,

the Fund in that case sought to impose ERISA liability against "the chief corporate officer and

principal shareholder" of the corporation.  *Id.* at 1547.  As it does here, the Fund made no

allegations that this individual "was the alter ego of the corporation or that the circumstances

required piercing the corporate veil"; instead, it asserted that ERISA imposed direct personal

---

[5] ERISA defines an "employer" as "any person acting directly as an employer, or indirectly in
the interest of an employer, in relation to an employee benefit plan; . . . includ[ing] a group or
association of employers acting for an employer in such capacity."  ERISA § 3(5), 29 U.S.C.
§ 1002(5).

liability because of Kracher's status and powers as an owner and officer of the corporation. *Id.*

The Court squarely and unequivocally rejected the Fund's ERISA claim:

> Neither the plan nor the collective bargaining agreement contains any provision tending to impose personal liability on Kracher. Only the corporation, as signatory to the agreement, fits within the parameters of Section 515 as the "employer who is obligated to make contributions . . . under the terms of" either the plan or the agreement. Nor do the statutory definitions of "employer" and "person" supply the necessary link between liability and Kracher individually. It cannot be said that a corporate official is a "person acting directly as an employer." It is hornbook law that a corporate employee functioning purely as such acts not as but solely for the corporate employer; the corporation acts as the employer it is, though it can do so only through the agency of the employee or someone else. Moreover, we think it would be foolhardy to consider Kracher as one who "act[ed] indirectly in the interest of an employer." Such an expansive reading would mean that every employee or other agent who discharges some responsibility in regard to a corporation's employee benefit plan would be swept within the definition and thereby become an "employer" subject to liability for delinquent contributions. Obviously Congress did not contemplate that.

*Id.* at 1548.

This holding, limiting "employer" liability to the corporate entity signing the Agreements, is fully consistent with other opinions from this Circuit and from other federal courts. *See, e.g., Connors v. P & M Coal Co.*, 801 F.2d 1373 (D.C. Cir. 1986); *Mason Tenders Council Welfare Fund v. Thomsen Construction Co.*, 301 F.3d 50 (2d Cir. 2002); *see also Minnesota Laborers Health and Welfare Fund v. Scanlan*, 360 F.3d 925 (8th Cir. 2004) (imposing individual liability only to the extent individual signed agreement on behalf of an unincorporated business); *Trustees of National Elevator Industry Pension, Health Benefit & Educational Funds v. Lutyk*, 332 F.3d 188 (3d Cir. 2003) (imposing liability only upon factual findings sufficient to establish that the individual was acting as an alter ego of the corporation).

Even the Fund's own express contractual language belies the notion that individual owners, officers, or agents assumed a personal obligation to make contributions. Article I, Section 7 of the Plan document, appended to and incorporated by reference into the Complaint as Exhibit 1, defines "Contributing Employer" as "any person, company or business organization which is or shall become a party to the Trust Agreement and which has agreed or shall agree in a Collective Bargaining Agreement with the Union to make contributions to the Pension Fund." Complaint, Exh. 1, p. 4 (incorporated by reference at Complaint, ¶ 10). The Complaint could not be clearer in identifying "the Company," and not the Individual Defendants, as the party described in Article I, Section 7: the entity that "agreed to abide" by the terms of the Agreements. Complaint, ¶ 10. Thus, the Company, and no one else, is the "Contributing Employer" subject to the contribution obligation. Complaint, Exh. 1, p. 15 (Article VI, Section 1); *see also* Complaint, Exh. 2, p. 63 (Plan document, Section 10.07).

As with the contract issues, the Fund's ERISA claims lack any factual allegations that would allow the Court to disregard the separate legal existence of the corporation in order to hold the Individual Defendants liable as "employers." Because such allegations have not and cannot be made, the Complaint is insufficient as a matter of law to state an ERISA claim upon which relief can be granted. Accordingly, Counts II and V, which set forth the Fund's ERISA claims, should be dismissed as to each of the Individual Defendants.

**C.     Status as an Owner, Officer, or Agent Does Not Create Fiduciary Liability for the Corporation's Alleged Non-Payment of Plan Contributions**

Count VII, the final claim in the Complaint, contends that the Individual Defendants are "fiduciaries" under ERISA, Complaint, ¶ 47, who allegedly breached their fiduciary duties when they "caused and directed [the] Company to fail and refuse to forward" contributions owed by

the Company to the Plan. *Id.*, ¶ 48.[6]  ERISA's fiduciary requirements, however, do not alter the general rule that individual owners, officers, and employees are not personally responsible for corporate debts.

In *Kracher*, the D.C. Circuit soundly rejected a prior attempt by this same Fund to extend corporate contribution liability to individuals. Although the Fund's complaint in *Kracher* did not invoke ERISA's fiduciary liability provisions, the new legal theory alters neither the D.C. Circuit's sweeping rationale nor the result.  Citing ERISA legislative history addressing contribution obligations to collectively-bargained plans, the Court ruled that it was "unable to equate these statements of congressional purpose with an indication of congressional intent to hold corporate owners and officers liable for corporate failure to remit contributions owing to employee pension plans.  There is nothing in the legislative history that suggests that Congress meant to expand that liability beyond parties who in a plan or collective bargaining agreement obligated themselves to make those contributions."  856 F.2d at 1550.  It added:  "Limited liability is a hallmark of corporate law.  Surely if Congress had decided to alter such a universal and time-honored concept, it would have signaled that resolve somehow in the legislative history."  *Id.*  The force of these findings is not diminished merely because the Fund is invoking a different section of ERISA in an effort to abrogate the same cornerstone principles.

The Court in *Kracher* steadfastly rejected the Fund's contention that "decisions regarding payment of pension contributions" are sufficient to find that a corporate owner or officer "acted 'indirectly in the interest of an employer . . . in relation to an employee benefit plan.'"  *Id.* at

---

[6]  The Complaint alleges that such conduct "constitutes a violation of ERISA Section 502(a), . . . 29 U.S.C. § 1132(a)(2)."  Complaint, ¶ 50.  That section, however, does not set forth any legal requirements that can be "violated"; it merely authorizes certain parties to bring a civil enforcement action.  *See* 29 U.S.C. § 1132(a).  Without waiving any potential defenses, the Individual Defendants will assume for purposes of this Motion that the Fund would contend that some other statutory provision of ERISA was violated.

1547. Surely, then, it would respond no differently to a contention that the same contribution decisions are an exercise of "discretionary authority or discretionary control respecting management or disposition of [plan] assets." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) (definition of "fiduciary").

The Fund seeks to overcome its setback in *Kracher* by invoking Article I, Section 10 of the Trust document, which proclaims:

> All such Employer Contributions are, and shall be considered as, plan assets from the date on which the hours (whether worked or paid) for which the Contributing Employer is obligated to pay contributions to the Fund accrue, whether or not such Employer Contributions are collected or received by the Fund.

Complaint, Exh. 1, at 5. If extended to ERISA, this definition would mean that any individual with the authority to make a contribution is handling "plan assets." Indeed, because contribution obligations accrue daily for each hour worked but are paid "on a monthly basis," Complaint, ¶ 11(a), every contributing corporation would invariably possess "plan assets" from the first workday of each month until month's end, when the associated remittance is made. This would mean that owners and officers of every contributing employer – even those who invariably make timely monthly payments – would continuously have control over "plan assets."

This conflicts directly with *Kracher*, in which the Fund assured a skeptical Court that it was not seeking "automatic penetration of the corporate veil." 856 F.2d at 1548. The more limited rule the Fund advocated in that case would have extended liability only to individuals with a "substantial ownership interest" who actually exercised specific control "over matters precipitating nonpayment." *Id.* at 1548-49. Even that was too much for the D.C. Circuit, which found no evidence of that Congress intended ERISA to result in even a less aggressive alteration of corporate limited liability principles. *Id.* at 1550. Yet, if this Court gave effect to the Trust

language now advanced by the Fund, it would be approving the very "automatic penetration of the corporate veil" that was disavowed in *Kracher*.

The Trust document's overreaching definition of "plan assets" does not dictate the meaning of the same term for ERISA purposes. Just last year, Congress amended ERISA to add an express statutory definition of "plan assets." Subject to exceptions not applicable to this case, the new provision states that the definition must be established by "such regulations as the Secretary [of Labor] may prescribe." ERISA § 3(42), 29 U.S.C. § 1002(42). The pertinent regulations do not provide direct guidance concerning employer contributions made from general corporate assets, but they do explicitly address the status of contributions made from the assets of individual participants. 29 C.F.R. § 2510.3-102. Even in this situation, in which the participant's own money is temporarily entrusted to an employer for deposit in the plan, the regulations do not accept the Fund's proposed approach of immediate "plan asset" status. Instead, they offer the employer a reasonable amount of time, not to exceed 15 days, to segregate the participant's money from general employer assets. *Id.* A rule that would treat contributions from the corporation's own general assets more harshly than contributions earmarked from participant funds cannot be justified.

Where Congress has entrusted the interpretation of a statutory term to an administrative agency, private parties are not free to usurp this authority by imposing a definition that is at odds with agency regulations. Nor is this Court empowered to expand the definition. *See Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 879 (9th Cir. 2004) ("Nor was there as much room for judicial innovation in the absence of regulation by the Secretary of Labor, because the statute engaged an administrative agency to interpret the Act.") (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003)).

In addition to its incongruity with applicable regulations, the Fund's "plan asset" interpretation would create an irreconcilable conflict with ERISA's other statutory provisions. Most notably, subject to exceptions that are not applicable in this case, section 403 of ERISA sets forth the following requirement:

> [A]ll assets of an employee benefit plan shall be held in trust by one or more trustees. Such trustee or trustees shall be either named in the trust instrument or in the plan instrument described in section 1102 (a) of this title or appointed by a person who is a named fiduciary, and upon acceptance of being named or appointed, the trustee or trustees shall have exclusive authority and discretion to manage and control the assets of the plan

ERISA § 403(a), 29 U.S.C. § 1103(a).  Owners and officers of a corporation are not named "trustees," and the Complaint does not so allege.  This precludes the interpretation urged by the Fund.  If, by statute, the named trustees have "exclusive authority and discretion to manage and control the assets of the plan," *id.*, there is no room for any other person to entity to exercise "discretionary authority or discretionary control respecting management or disposition of [plan] assets" within the meaning of ERISA's "fiduciary" definition.  ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

Defendants are unaware of any decision in this Circuit since *Kracher* that directly considers the Fund's fiduciary theory.  Other federal appeals courts, however, have addressed it. Most recently, in *Holdeman v. Devine*, 474 F.3d 770 (10th Cir. 2007), the 10th Circuit reaffirmed its reasoning in *In re Luna*, 406 F.3d 1192 (10th Cir.2005), holding that a corporate officer acted solely in his corporate capacity, and not as a plan fiduciary, when he allocated funds between plan contributions and other corporate purposes.  474 F.3d at 780.  In reaching this conclusion, the court distinguished between "the contractual right to collect unpaid contributions" – a "future interest in the collection of the contractually-owed contributions" – and a "present interest in the unpaid contributions [before] they are actually paid to the plan." *Id.*

at 777 (emphasis in original). The latter is a plan asset, but the former is not. *Id.* Because "'[t]he asset in question . . . [wa]s the [t]rustees' contractual right to collect the unpaid contributions, and the [corporate officer] exercised no control over how the [t]rustees manage[d] or dispose[d] of that asset,'" the officer did not become a fiduciary for purposes of ERISA. *Id.* (quoting *Luna*, 406 F.3d at 1204); *see also* Restatement (Third) of Trusts § 5(i), (k) (a contract to convey property does not give rise to a fiduciary relationship and the relationship of debtor to creditor that results from contract is not fiduciary in nature) (cited in *Luna*, 406 F.3d at 1204).

Several other courts have reached similar conclusions. *See, e.g., Cline v. Industrial Maintenance Engineering & Contracting Co.*, 200 F.3d 1223 (9th Cir. 2000)("Until the employer pays the employer contributions over to the plan, the contributions do not become plan assets."); *Local Union 2134, United Mine Workers of America v. Powhatan Fuel, Inc.*, 828 F.2d 710, 714 (11th Cir. 1987) (decision to pay corporate bills other than plan obligations "was not made in [a] capacity as fiduciary of the health plan, it was made as the president of the corporation"; "until monies were paid by the corporation to the plan there were no assets in the plan under the provisions of ERISA").

Courts have imposed fiduciary obligations when <u>employee</u> contributions held by the employer were not forwarded to the plan. *E.g., LoPresti v. Terwilliger*, 126 F.3d 34 (2d Cir. 1997); *Bannistor v. Ullman*, 287 F.3d 394 (5th Cir. 2002). These factually distinct situations, however, are explicitly addressed by the Department of Labor regulation described above, 29 C.F.R. § 2510.3-102 (cited *supra* at 11), and have no applicability to this matter.

Other decisions have given effect to contractual provisions in collective bargaining agreements, similar but not identical to the one in this case, to find an exception to the usual rule that unpaid contributions are plan assets. *See, e.g., ITPE Pension Fund v. Hall*, 334 F.3d 1011,

1013 (11th Cir. 2003) ("[U]npaid employer contributions are not assets of a fund unless the agreement between the fund and the employer specifically and clearly declares otherwise.") (footnote omitted); *Trustees of Southern CA Pipe Trades Health and Welfare Trust Fund v. Temecula Mechanical, Inc.*, 438 F. Supp. 2d 1156 (C.D. Cal. 2006) (describing "exception" to the "general rule regarding unpaid employer contributions" when "the plan document itself identifies unpaid employer contributions as a plan asset"). These cases were decided, however, before Congress amended ERISA to add a statutory definition of "plan assets." ERISA § 3(42), 29 U.S.C. § 1002(42) (codifying Pub L. No. 280, 109th Cong., 2d Sess., § 611(f), 120 Stat. 780, 972 (Aug. 17, 2006)). Assuming, without conceding, that private parties can contractually dictate the interpretation of a statutory term not expressly defined by law, Congress' enactment removes the underpinning of these decisions by introducing an statutory definition that points to agency regulations, not private contracts. *See ITPE Pension Fund*, 334 F.3d at 1013 (expressly noting the absence of a statutory definition within ERISA).

The Fund, therefore, cannot circumvent the D.C. Circuit's clear rejection of individual liability by invoking a different section of ERISA. The rationale of *Kracher*, the pertinent statutory and regulatory backdrop, and pertinent case law in other Circuits all are inconsistent with the Fund's novel legal theory. Accordingly, Count VII, which is asserted only against the Individual Defendants and not against the Company, should be dismissed in its entirety.

**D.    This Court Lacks Personal Jurisdiction Over the Individual Defendants**

This Court may only exercise personal jurisdiction over parties outside the District of Columbia based on either an "enduring relationship," D.C. Code § 13-422, or "conduct," D.C. Code § 13-423. Neither is present in this case with respect to the Individual Defendants. The Complaint properly lists the address of each Individual Defendant as the same Massachusetts

business address. Moreover, although the Company is alleged to have entered into one or more agreements requiring certain payments to the Fund, which is located in the District of Columbia, no such allegations are made with respect to any of the Individual Defendants. *See* Complaint, ¶¶ 9-12. The declarations attached to this Motion, one from each Individual Defendant, make clear that none of the permissible bases for personal jurisdiction are present in this case. *See* Exhibit A (Declaration of Alan Aulson); Exhibit B (Declaration of Maureen Aulson); and Exhibit C (Declaration of Robert P. Hilson).[7]    Accordingly, even if this Court were to find a cause of action against the Individual Defendants as to which relief could be granted, the Complaint as to the Individual Defendants must be dismissed due to lack of personal jurisdiction.

---

[7] "A court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction, or subject matter jurisdiction." *Artis v. Greenspan,* 223 F.Supp.2d 139, 152 n. 1 (D.D.C.2002)

## CONCLUSION

For all of the foregoing reasons, Defendants Alan Aulson, Maureen Aulson, and Bob Hilson respectfully request that this Court dismiss all claims against them, including Count VII in its entirety and Counts I, II, IV, V, and VI except insofar as they relate exclusively to the Company.

Dated:  June 18, 2007

Respectfully submitted,

ISLER DARE RAY & RADCLIFFE, P.C.

_____
Edward Lee Isler, D.C. Bar No. 417076
Derry Dean Sparlin, Jr.
1919 Gallows Road, Suite 320
Vienna, Virginia 22182
(703) 748-2690 / (703) 748-2695 (fax)

Attorneys for Defendants
The Aulson Co., Inc., Alan Aulson,
Maureen Aulson, and Bob Hilson

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Memorandum of Points and Authorities was, this 18th day of June, 2007, served by first class mail, postage prepaid, to the following:

> Sanford G. Rosenthal
> Jessica L. Tortella
> Jennings Sigmond, P.C.
> The Penn Mutual Towers, 16th Floor
> 510 Walnut Street, Independence Square
> Philadelphia, Pennsylvania  19106

Edward Lee Isler

17

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:07-cv-00684 Assigned To: Friedman, Paul L. |
| THE AULSON CO., INC. ALAN AULSON MAUREEN AULSON and BOB HILSON | ) ) ) ) ) | |
| Defendants. | ) ) | |

### DECLARATION OF ALAN AULSON

I, Alan Aulson, do hereby declare and state as follows:

1.      I have personal knowledge of the facts stated herein, and I am competent to testify as to those facts.

2.      I am an individual person who is a citizen and resident of the Commonwealth of Massachusetts.

3.      I am employed by The Aulson Co., Inc., a ~~New York~~ *MASSACHUSETTS* corporation. My place of work is The Aulson Co., Inc.'s principal place of business, located in Massachusetts.

4.      I have not, in my personal capacity, transacted any business in the District of Columbia relating to any claim for relief in this matter.

5.      I have not, in my personal capacity, contracted to supply any services in the District of Columbia relating to any claim for relief in this matter.

6.    I have not caused tortuous injury, and the Complaint does not so allege, in the District of Columbia by an act or omission in the District of Columbia.

7.    I have not caused tortuous injury, and the Complaint does not so allege, in the District of Columbia by an act or omission outside the District of Columbia.

8.    I do not have an interest in, use, or possess any real property in the District of Columbia.

9.    I have not, in my personal capacity, contracted to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia relating to any claim for relief in this matter.

10.    I do not have a marital or parent and child relationship with anyone in the District of Columbia.

11.    To the best of my understanding, I do not have any other connection with the District of Columbia sufficient to provide a basis for personal jurisdiction consistent with the United States Constitution.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of June 2007

Alan Aulson

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| THE AULSON CO., INC. ALAN AULSON MAUREEN AULSON and BOB HILSON | ) ) ) ) |
| Defendants. | ) ) ) |

Case No. 1:07-cv-00684
Assigned To: Friedman, Paul L.

## DECLARATION OF MAUREEN AULSON

I, Maureen Aulson, do hereby declare and state as follows:

1.      I have personal knowledge of the facts stated herein, and I am competent to testify as to those facts.

2.      I am an individual person who is a citizen and resident of the Commonwealth of Massachusetts.

3.      I am employed by The Aulson Co., Inc., a ~~New York~~ MASSACHUSETTS corporation.  My place of work is The Aulson Co., Inc.'s principal place of business, located in Massachusetts.

4.      I have not, in my personal capacity, transacted any business in the District of Columbia relating to any claim for relief in this matter.

5.      I have not, in my personal capacity, contracted to supply any services in the District of Columbia relating to any claim for relief in this matter.

6.      I have not caused tortuous injury, and the Complaint does not so allege, in the District of Columbia by an act or omission in the District of Columbia.

7.      I have not caused tortuous injury, and the Complaint does not so allege, in the District of Columbia by an act or omission outside the District of Columbia.

8.      I do not have an interest in, use, or possess any real property in the District of Columbia.

9.      I have not, in my personal capacity, contracted to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia relating to any claim for relief in this matter.

10.     I do not have a marital or parent and child relationship with anyone in the District of Columbia.

11.     To the best of my understanding, I do not have any other connection with the District of Columbia sufficient to provide a basis for personal jurisdiction consistent with the United States Constitution.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of June 2007

_____
            Maureen Aulson

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **INTERNATIONAL PAINTERS AND** | ) | |
| **ALLIED TRADES INDUSTRY PENSION** | ) | |
| **FUND** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:07-cv-00684** |
| | ) | **Assigned To:  Friedman, Paul L.** |
| **THE AULSON CO., INC.** | ) | |
| **ALAN AULSON** | ) | |
| **MAUREEN AULSON and** | ) | |
| **BOB HILSON** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DECLARATION OF ROBERT P. HILSON

I, Robert P. (Bob) Hilson, do hereby declare and state as follows:

1.     I have personal knowledge of the facts stated herein, and I am competent to testify as to those facts.

2.     I am an individual person who is a citizen and resident of the Commonwealth of Massachusetts.

3.     I am employed by The Aulson Co., Inc., a ~~New York~~ *MASSACHUSETTS* corporation. My place of work is The Aulson Co., Inc.'s principal place of business, located in Massachusetts.

4.     I have not, in my personal capacity, transacted any business in the District of Columbia relating to any claim for relief in this matter.

5.     I have not, in my personal capacity, contracted to supply any services in the District of Columbia relating to any claim for relief in this matter.

6.    I have not caused tortuous injury, and the Complaint does not so allege, in the District of Columbia by an act or omission in the District of Columbia.

7.    I have not caused tortuous injury, and the Complaint does not so allege, in the District of Columbia by an act or omission outside the District of Columbia.

8.    I do not have an interest in, use, or possess any real property in the District of Columbia.

9.    I have not, in my personal capacity, contracted to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia relating to any claim for relief in this matter.

10.    I do not have a marital or parent and child relationship with anyone in the District of Columbia.

11.    To the best of my understanding, I do not have any other connection with the District of Columbia sufficient to provide a basis for personal jurisdiction consistent with the United States Constitution.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 18th day of June 2007

_____
Robert P. (Bob) Hilson